UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

KB2S, INC., et al.,

    Plaintiffs,

v.

CITY OF SAN DIEGO, CALIFORNIA,

    Defendant.

Civil No. 04cv0441 BEN(AJB)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE FEDERAL HOUSING ACT CLAIM AND DISMISSING THE REMAINING STATE LAW CLAIMS**

[Dkt. No. 71]

Now before the Court is the Motion for Summary Judgment of Defendant City of San Diego, California.[1] Summary judgment for Defendant City of San Diego is warranted because Plaintiffs KB2S, Inc. and KCW Consulting, Inc. lack Article III standing. Article III standing is necessary for federal court jurisdiction.

## I. Article III Standing

"In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified School District v. Newdow,* 124 S.Ct. 2301, 2308 (2004), *reh'g denied*, 125 S.Ct. 21 (2004). "Article III standing must be determined as a threshold matter in every federal case." *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004). The question of Plaintiffs' Article III standing has been raised by the Defendant in its Motion for Summary Judgment.

---

[1] Plaintiffs ask that their Opposition papers be construed as a cross-motion for summary judgment. Because Defendant's motion is granted, the Plaintiffs' request is Denied as moot.

### A. Standing Requirements

As the Supreme Court recently observed, the standing requirements are well known. "The Article III limitations are familiar: the plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Newdow*, 124 S.Ct., at 2308-09 (citations omitted). The Supreme Court applies a tripartite test. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements.").

### B. Tripartite Test for Standing

The Article III standing test requires a plaintiff to demonstrate: (1) an injury in fact; (2) a causal connection; and (3) redressability. "First, the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan,* 504 U.S., at 560 "Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Lujan,* 504 U.S., at 560 (citations omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S., at 561; *see also City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004).

### C. The Standing Test at the Summary Judgment Stage

Since this case is at the summary judgment stage, Article III standing must be supported by evidence. "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S., at 560 (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice...." *Lujan,* 504

U.S., at 561. "In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. Rule Civ. Proc. 56(e)); *Bras v. California Public Utilities Commission*, 59 F.3d 869, 874 (9th Cir. 1995), *cert. denied*, *Calif. Pub. Utilities Com'n v. Bras*, 516 U.S. 1084 (1996) ("In deciding whether [plaintiff] has [Article III] standing, we must consider the allegations of fact contained in [plaintiff's] declaration and other affidavits in support of his assertion of standing.").

### D.  Plaintiffs' Federal Claim for Relief – The Fair Housing Act

In this action, Plaintiffs assert three claims for relief. Since two of the claims are state claims between non-diverse parties, they depend upon the Court's exercise of pendant jurisdiction. Because pendant jurisdiction requires federal court jurisdiction over the main claim, the Article III inquiry begins here. Plaintiff's main claim asserts a violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq.*, and §§ 3604 and 3617 in general.

The Complaint goes no farther in terms of specificity. Section 3604(a) of the FHA prohibits, *inter alia*, refusals to rent or sell dwellings to any person because of race, color, religion, sex, familial status, or national origin. Section 3604(b) prohibits discrimination against any person in the terms and conditions of a sale or rental of a dwelling, while § 3604(c) prohibits discrimination in the advertising of dwellings for sale or rent. Section 3604(d), in turn, prohibits representations made to members of the protected classes that a dwelling is not available when, in fact, a dwelling is available, and § 3604(e) prohibits inducing persons to rent or sell a dwelling because of a neighborhood's particular makeup. Finally, § 3604(f) prohibits various discrimination in selling or renting a dwelling because of a person's handicap. Section 3617, the other provision of the FHA which Plaintiffs identify in their Complaint, makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of..." any rights granted or protected by §§ 3603 - 3606 of the FHA. Section 3603 makes the

FHA applicable to all dwellings (except single family houses sold or rented by their owners). Section 3605 prohibits discrimination by residential real estate brokers and lenders, while § 3606 extends the prohibition to multiple-listing services.

**E.  The Factual Context**

The following facts are taken from the Complaint.[2]  Plaintiffs'[3] claim focuses on 5.76 acres of undeveloped land located at 4661 Home Avenue, within the "City Heights" neighborhood of the City of San Diego, California. KB2S planned to build 50-units of "low and very-low income housing" on the lot. In October, 2002 KB2S entered into a contract with a private party to buy the Home Avenue lot. The contract was contingent upon, among other things, KB2S obtaining an award of state tax credits to finance the construction of the units on the Home Avenue lot. Shortly thereafter KB2S "entered into discussions with the City through its staff and the 'City heights Area Planning Committee'...for preliminary review and recommendations." According to the Complaint, "the City and the City Heights APC refused to review KB2S' development application, advising that they did not want any low-income family housing to be provided in City Heights." Moreover, "the City's actions and inactions which were taken in response to the City Heights APC motive of excluding low-income families with children [sic] minority households, accordingly were designed to and did stall all progress on completing the development and prevented it from receiving the approvals necessary for it to qualify to receive  tax credit award, a necessary component of the development's financing." In the same vein, the Complaint alleges that, "the City and its officers at the behest of the City Heights APC also interfered directly with KB2S's agreement to purchase the Home Avenue development site by convincing [the seller] to sell the land to the City in order to prevent its use as low-income family housing....Thus, [the seller] without

---

[2] These are not court findings of fact. Likewise, they are not facts necessarily supported by evidence or undisputed facts. They are set forth here to provide a context for understanding Plaintiffs' claim and evaluating Plaintiffs' claimed injury-in-fact.

[3] The Complaint only describes facts and claims relating to Plaintiff KB2S. It is silent as to any acts taken by, or harming, the second named Plaintiff, KCW Consulting.

notice to KB2S, unilaterally opened a second escrow and sold the property to the City." According to the Complaint, "poor families with children and racial minorities are...disproportionately harmed by the City's current shortage of low income housing, and...by the City's policy and its ongoing conduct and policy of excluding housing opportunities for these legally protected groups in City Heights and elsewhere."

To sum up, KB2S asserts that it wanted to build low-income housing. The City Heights Area Planning Committee did not want any more low income housing in its neighborhood. A member of the planning committee convinced the Defendant City of San Diego to prevent additional low-income housing in the City Heights area. To this end, the City of San Diego delayed approving KB2S' building permit. The City of San Diego then bought the undeveloped lot to prevent KB2S from going forward with its building plans.

**F.  Plaintiffs' Articulated Injury in Fact**

The Defendant moves for summary judgment based, *inter alia*, on the fact that Plaintiffs do not have Article III standing. Plaintiffs do not have standing because there is no evidence that they have suffered an injury-in-fact for purposes of a Fair Housing Act claim.

In its Complaint, KP2S describes its injury in these terms:

> The City's conduct in halting KB2S's low-income development at the behest of the City Heights APC for, at least in part, the unlawful motive of excluding poor families with children and racial and ethnic minorities, illegally deprives low income families with children and other protected minority groups living in or near the City of San Diego of housing opportunities, including the Home Avenue development, that would otherwise be available to them.
> The City's exclusionary housing policies and practices have also caused KB2S to incur (and to continue to incur) hundreds of thousands of dollars in out of pocket expenses, delay costs and millions of dollars in loss from the lost benefit of its real estate development.

More importantly, in its brief in opposition to the City's motion for summary judgment, Plaintiffs describe the injury like this:

> Here, injury "in fact" is obviously met because the Home Avenue development did take all possible steps as directed by the City to apply [for a building permit] and the steps were stopped cold by the City's interference with KB2S's purchase contract and economic expectancy by telling the seller that KB2S's deal was dead because the City would kill it, which obviously prevented the application process from continuing as, in addition to the interference, the City purchased the site to stop KB2S's low-income project.

*See*, Plaintiffs' Opposition to Defendant City of San Diego's Motion for Summary Judgment and KB2S's Cross-Motion for Summary Judgment or Adjudication of Issues, at 14.  This statement by Plaintiffs of their Article III injury in fact bears close attention as it is the only articulation or explanation of their claimed injury found anywhere in their briefs.

### G. Analysis of Plaintiffs' Injury in Fact

Even under the liberal standing requirement applied to FHA cases, Plaintiffs' claimed injury falls short of satisfying the Article III standing requirements.  The identified injury[4] is unsupported by evidence and is at best only conjectural and hypothetical.

Plaintiff's evidence failure is basis enough to grant summary judgment for the Defendant.  In the brief, Plaintiffs simply do not point to any evidence in support of the claimed injury in fact.  The only evidence offered anywhere in the papers is cited in Plaintiffs' separate statement of genuine issues and undisputed facts.  There Plaintiffs point to three documents:  the deposition testimony of James Taylor, the declaration of Nick Antoniades, and the declaration of B. Lane MacKenzie.[5]

Taylor's testimony offers little help.  Although the portion of the deposition cited by Plaintiffs

---

[4] It is worth pointing out that Plaintiffs have not brought a state law claim for tortious interference with contractual relations.  If the articulated injury was proven, Plaintiffs might well prevail on such a state cause of action.

[5] Plaintiffs object to six items offered as evidence in support of the City's motion.  *See* Objection to Defendant City of San Diego's Evidence Submitted in Support of its Motion for Summary judgment, filed September 6, 2006.  Plaintiffs object to Declarations of Nick Antoniades, Lara Gates and B. Lane MacKenzie.  As Plaintiffs refer to these declarations in support of their own position, the objection as to these three exhibits is Denied.  Plaintiffs also object to the expert reports of Paul Marra, Steven Mattas, and Dan Mallec.  The objection as to Defendant's expert reports is Granted, as they are not offered under oath.

does not disclose it, and the initial portion of the deposition transcript is omitted from Plaintiffs' exhibit, Taylor appears to have been the listing real estate agent for the land upon which Plaintiffs hoped to build. The crux of Taylor's testimony is that Laura Evans told him that the "property is never going to get entitled." *See,* Exhibit "F" to Plaintiffs' Opposition to Defendant City of San Diego's Motion for Summary Judgment, at 112-113. Unfortunately, there is no indication whether Evans was an employee of the City, or an individual speaking on her own. Taylor testified that he did not ask Evans what she meant by the statement. *Id.* at 113:2. Moreover, elsewhere in his testimony, Taylor notes that it was his opinion as a broker that the property had several challenges for potential buyers, including a narrow lot with a steep slope and a creek running through it. *Id.* at 110:2 - 111:17. On its own, this could well be a benign explanation for the Evans remark without implicating the FHA.

The Atoniades Declaration, which Plaintiffs cite, also offers nothing to support the claimed standing injury. Atoniades was the seller of the lot which KB2S had hoped to purchase and upon which it had hoped to build. He states that a contingent sales agreement for $1,000,000 was reached and escrow opened during the fall of 2002, and that monthly payments of $3,000 were to be made to keep the escrow open. *See*, Declaration of Nick Antoniades in Support of the City of San Diego's Motion for Summary Judgment, at ¶¶ 2, 5. He also states that Plaintiff KB2S failed to make a payment for July 2003 or any further payments, that he met with Plaintiff's agent, and that KB2S did not want to go forward without extending the escrow deadline. *Id.* at ¶¶ 8-10. Thus, escrow was cancelled on July 6, 2003. *Id.* Finally, in paragraph 11 of the declaration, which Plaintiffs' cite in support of their claimed injury-in-fact, Antoniades states that it was after the cancellation of the escrow that he entered into negotiations with the City which ultimately led to his selling the lot to the City. He states:

> On or before the time I entered into negotiations with the City for the sale of the Property, my agent informed the City that the KB2S escrow had terminated. I ultimately agreed in approximately September, 2003, to sell the Property to the City for $800,000 cash plus $250,000 in tax credits. This was a very attractive deal because (a) the price term was roughly

> equivalent to $900,000 cash; (b) there were no contingencies; (c) I was confident that the City could come up with the money and tax credits; and (d) the City was willing to close escrow in a very short time frame.

*Id.* at ¶ 11. Antoniades' Declaration does not evidence that the City interfered with Plaintiffs' deal nor does it evidence what the City's motivation was in purchasing the site. It does evidence that the City properly waited until after the KB2S escrow cancelled to negotiate the purchase of the lot.

Finally, the MacKenzie Declaration, which Plaintiffs cite, offers nothing to support the claimed standing injury. MacKenzie is a supervisor for the City of San Diego's Real Estate Acquisition Division. He states that the City had been interested in the lot as a potential park site. *See*, Declaration of B. Lane MacKenzie in Support of the City of San Diego's Motion for Summary Judgment, at ¶ 3. He states that the owner's real estate agent contacted him in the first week of July 2003 and explained that the property had fallen out of escrow. *Id.* On July 8, 2003 the City offered to purchase the property; in September 2003 escrow was opened and closed and the property transferred. *Id.* at ¶¶ 5-6. There is nothing in the declaration to evidence the injury claimed by Plaintiffs. Instead, the two declarations and the deposition evidence cited by Plaintiffs create no genuine issue of fact in support of Plaintiffs' claimed Article III injury-in-fact.

At the summary judgment stage, a Plaintiff must come forward and identify the evidence that supports its standing to litigate in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S., at 560; *Elk Grove Unified School District v. Newdow,* 124 S.Ct., at 2308. Plaintiffs here have failed to do so and no more is necessary to grant summary judgment to Defendant. *Rector v. City & County of Denver*, 348 F.3d 935, 943 (10th Cir. 2003) ("Thus, when the procedural posture of the case is a motion for summary judgment and plaintiffs' standing is at issue a plaintiff must establish that there exists no genuine issue of material fact as to justiciability and mere allegations of injury are insufficient."); *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Management Council*, 364 F.3d 269, 279 (5th Cir. 2004) ("A plaintiff's failure to establish one of the three elements of Article III standing deprives federal courts of

jurisdiction to hear the plaintiff's suit."); *Sault Ste. Marie Tribe of Chippewa Indians v. U.S.A.*, 288 F.3d 910 (6th Cir. 2002), *r'hng en banc denied*, 2002 U.S. App. Lexis 16352 (vacating summary judgment and remanding for dismissal for lack jurisdiction due to absence of evidence of Article III standing).

Even under the relaxed standard for FHA cases, Plaintiffs would have to come forward with much more evidence to demonstrate an injury-in-fact. Normally, a plaintiff would have to show his own injury by a defendant's violation of the FHA. This would be difficult, if not impossible for Plaintiffs KB2S and KCW Consulting to do, as neither appears to be part of a group to which the FHA extends protection (*i.e.,* a member of a particular "race, color, religion, sex, familial status, or national origin.") See 42 U.S.C. § 3604. Yet, a FHA plaintiff may assert that others were discriminated against by the defendant's acts. "Unlike actions brought under other provisions of civil rights law, the plaintiff need not allege that he or she was a victim of discrimination.*" San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998). Instead, "to establish standing under the Act, all [a plaintiff] need show is that the [defendant] interfered with the housing rights of [a protected group member] and that, as a result, [the plaintiff] suffered an actual injury." *Id.*

Were Plaintiffs to put forth their best case, they would show that they were builders of low income housing, that they had purchased a lot upon which to build, that they had applied for a building permit, that the permit was denied by the defendant for a discriminatory reason, and that plaintiffs were harmed, and that had the permit been granted, housing would have been built, members of a protected group would have been able to purchase the housing, and the result would be a more diverse local community. Though it has no obligation to do so, the Court has reviewed all of Plaintiffs' exhibits in an effort to see if such a case, had it been made, could be supported by evidence. The evidence is simply lacking.

There is no evidence that Plaintiffs have built low-income housing before. There is no evidence that Plaintiffs owned the lot upon which they desired to build or that they did what was necessary to

perfect their right to build upon a lot. There is no evidence that they had formally applied for a building permit from the Defendant City of San Diego – only that they had made preliminary inquiries. There is no evidence that the City denied the permit application and that it was denied for an impermissible reason, as no formal building permit application was ever submitted. There is no evidence that had a permit been granted, that Plaintiffs would have the financial ability to build the proposed low income housing. There is no evidence that the resulting housing would be able to be purchased by those of low income. There is no evidence that Plaintiffs would have made a profit. There is only speculative evidence that those considered to be "low-income" purchasers would be members of a FHA protected group.

At the summary judgment stage the Plaintiffs must do more than allege an 'injury in fact.' In this case they have failed to do so. Plaintiffs have not offered evidence of a constitutional injury which is concrete and particularized, actual or imminent." *Lujan,* 504 U.S., at 560. Instead, the injury articulated is conjectural and hypothetical and not 'fairly traceable to the challenged action of the defendant," rather than "the result of the independent action of some third party not before the court.'" *Id.*; *see also City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004). There is simply a dearth of evidence presented concerning Plaintiffs' Article III standing. The lack of evidence presented to create a genuine issue of material fact is sufficient reason to grant the Defendant's motion for summary judgment.

There is another flaw in Plaintiffs' case. Plaintiffs' own expert report indicates that Hispanics and families make up a large percentage of the city's low income residents. However, the expert report also suggests that Hispanics and other minorities already make up a disproportionately *large* percentage of the population of the local City Heights community – the community in which Plaintiffs desire to build. This is extremely problematic for Plaintiffs' case.

In *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210 (1972) and *Gladstone, Realtors*

*v. Village of Bellwood*, 441 U.S. 91, 111-12 (1979), the Supreme Court allowed the constitutional standing requirement to be satisfied by the injury that flows from being deprived of "the social and professional benefits of living in an integrated community." In *Trafficante*, the defendant prevented a predominantly white apartment complex from becoming racially integrated. In *Gladstone*, however, the FHA defendants were transforming an already-integrated neighborhood into "a predominantly Negro community."

In this case, it appears that San Diego's City Heights neighborhood, like the neighborhood in *Gladstone*, is already a fully integrated community. A report by Plaintiffs' expert concludes that in the City of San Diego, "for householders less than sixty-five years old, Hispanics, African Americans, and "Other Race[s]" are almost twice as likely to be low income as Whites." *See,* Expert Report of Dennis J. Aigner, Exhibit "I" to Plaintiffs' Opposition, at 7. The expert also opines that for families, "all non-White racial/ethnic groups currently residing in San Diego are more than twice as likely to be below the poverty level as Whites. *Id.* From this Plaintiffs then argue (based on these statistical findings) that if a person or a family is "low-income," then it is likely to affect racial minorities more than Whites. While that may follow, it is only the starting point of consideration. If City Heights was an all-White community, then a city decision preventing the construction of low-income housing could prevent racial diversity and deprive potential residents of the benefits of living in an integrated community.

However, Plaintiffs' expert report demonstrates that City Heights is already racially diverse. For example, of the 22,931 households currently in City Heights, almost one-half (10,287) are Hispanic, while African Americans make up another 16% (3,692) and Asians make up another 15% (3,471). Whites makes up only 23% (5,290) of the community. *See,* Exhibit "12" to Expert Report of Dennis J. Aigner, Exhibit "I" to Plaintiffs' Opposition. The statistics are more pronounced when looking at the FHA protected class of families-with-children. Currently in City Heights there are 12,597 families with children. Of those, 60% (7,574) are Hispanic families, while 16.5% (2,079) are Asian families and

14.5% (1,827) are African American families. Whites make up less than 8% (993) of the families with children in the City Heights neighborhood. *See,* Exhibit "14B" to Expert Report of Dennis J. Aigner, Exhibit "I" to Plaintiffs' Opposition.

From this it can be seen that if Plaintiffs were to build additional low-income family housing in the City Heights neighborhood, and if Hispanics, African Americans, and Asians are twice as likely as Whites to be the potential occupants of that housing, the overall effect would be to further diminish the existing diversity and instead speed the undesirable transformation of the community into a predominantly segregated minority community – much like the case in *Gladstone,* (441 U.S. at 112). In other words, the existing residents could allege an FHA violation against the City and the Plaintiffs based upon their own deprivation of "the social and professional benefits of living in an integrated community" because of the segregating effect that additional low-income housing would have on City Heights.

The upshot is that even had Plaintiffs provided other evidence of Article III injury, the existing evidence exposes a foundational fissure in Plaintiffs' alleged FHA violation and the Defendant City of San Diego would still be entitled to summary judgment.

## II. Conclusion

The Plaintiffs' papers do not evidence a concrete injury. They do not demonstrate an actual injury. The Plaintiffs have the burden of demonstrating Article III standing with evidence. *Elk Grove Unified School District v. Newdow,* 124 S.Ct., at 2308. However, the Plaintiffs have failed to articulate a sufficient injury for standing or support the claimed injury with evidence. Therefore, because Plaintiffs have not established Article III standing, federal jurisdiction is lacking. Defendant's Motion for Summary Judgment is Granted.

Because federal jurisdiction is lacking over the federal FHA claim, the Court declines to exercise pendent jurisdiction over Plaintiffs' other state law claims (Count 2 – the State Fair Employment and

1 | Housing Act claim and Count 3 – the California Government Code Section 65008 claim) and dismisses Counts 2 and 3 without prejudice. The Clerk of Court may close the file.

**IT IS SO ORDERED.**

DATED: January 17, 2007

_____
Hon. Roger T. Benitez
United States District Judge